■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM RIVERA, Appellant. [806 NYS2d 537]—

Judgment, Supreme Court, New York County (John Cataldo, J., at plea; Laura Ward, J., at sentence), rendered December 19, 2003, convicting defendant of attempted criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony offender, to 5 to 10 years, unanimously reversed,

on the law, defendant's plea vacated, and the matter remanded for further proceedings on the original superior court information.

In December 1997, defendant was arrested for selling a vial of crack cocaine to an undercover officer. On December 11, 1997, defendant agreed to waive his right to indictment, and to plead guilty to attempted sale of a controlled substance in the fifth degree, with a promised sentence of 1½ to 3 years and with the agreement that the defense and prosecutor would ask for an evaluation by the Drug Treatment Alternative to Prison program (DTAP), to determine if defendant was eligible for treatment as an alternative. Defendant signed a waiver of indictment, agreeing to proceed on a superior court information (SCI) and the court explained the consequences of this waiver. Defendant then entered a plea of guilty to the fifth-degree attempted sale, and was adjudicated a second felony offender.

The superior court waiver form does not specify the charges, but provides: "the superior court information to be filed by the district attorney will charge the offenses named in this waiver." The waiver was undated, but signed by counsel, defendant and the Assistant District Attorney. It is numbered 9483/97. The superior court information bearing that number accused defendant of attempted sale of a controlled substance in the fifth degree (Penal Law §§ 110.00, 220.31).

On March 25, 1998, the parties appeared in court, and counsel noted that defendant had been accepted into the Daytop drug treatment program. When the court indicated that it would release defendant to Daytop, the prosecutor noted that it had been agreed previously that defendant would have to "replea [*sic*] to attempted sale in the third degree."

The court stated: "Okay, you don't have to file a waiver . . . Counsel your waiver is still in effect—the waiver of the prosecution by information . . . ," to which counsel responded "Yes, your honor." Counsel also indicated that the defendant had authorized her to enter a plea of guilty to attempted criminal sale of a controlled substance in the third degree.

The court asked defendant if he understood that he was withdrawing his plea to a lesser crime, which plea would be vacated, and entering a plea to a "higher graded crime." Defendant replied that he understood.

The terms of the DTAP agreement were that defendant would be released to the Daytop program. If he successfully completed it, the case against him would be dismissed. However, if he failed, he would be sentenced to a term of 3 to 6 years. Defendant withdrew his prior plea and entered the new plea of guilty

to the third-degree attempted sale "under SCI 9483 of 1997" (the same number as the SCI charging fifth-degree attempted sale).

Defendant participated in the Daytop program successfully through January 2000. However, on April 6, 2000, defendant left the program to buy over-the-counter medication, which was against the rules, and Daytop stated that it could no longer assume responsibility for defendant's treatment.

Subsequently, between April 6, 2000 and March 1, 2002, defendant entered into two new DTAP agreements in order to participate in two other drug treatment programs. Based on the later agreement, if defendant did not complete the program, but voluntarily returned to court, he would be sentenced to a term of 4 to 8 years. However, if he did not complete the program, and did not voluntarily return, he would receive a term of 5 to 10 years.

By August 19, 2002, defendant had received 21 "write-ups for rule infractions." On June 6, 2003, defendant left the program without authorization and a warrant was issued for his arrest. On August 18, 2003, he was returned to court involuntarily. On December 19, 2003, defendant was sentenced to 5 to 10 years.

Defendant argues that the charge of attempted third-degree sale was not part of the original SCI, and could not be added three months after appellant's initial waiver of indictment when defendant was no longer being held for grand jury action and in the absence of a written waiver of indictment, personally executed by defendant, reflecting the new attempted third-degree count.

We agree and for the following reasons reverse, vacate the plea and remand for further proceedings on the original superior court information. Article I, § 6 of the State Constitution declares that no person shall be held to answer for an infamous crime unless upon indictment by a grand jury. This is not merely a personal privilege of the defendant, but a "public fundamental right" which is the basis of jurisdiction to try and punish an individual (*People v Boston,* 75 NY2d 585, 587 [1990]).

There is a single exception, permitted by amendment, effective January 1, 1974, which permits that "a person held for the action of a grand jury upon a charge for [an infamous] offense, other than one punishable by death or life imprisonment, with the consent of the district attorney, may waive indictment by a grand jury and consent to be prosecuted on an information filed by the district attorney; such waiver shall be evidenced by written instrument signed by the defendant in open court in the presence of his or her counsel" (NY Const, art I, § 6; *see also*

*People v Boston,* 75 NY2d at 588). Thus, a defendant may waive indictment and agree to be prosecuted by a superior court information when: (1) the defendant is being held for grand jury action; (2) the defendant is not charged with a class A felony; and (3) the district attorney consents to the waiver (CPL 195.10 [1]; *People v Trueluck,* 88 NY2d 546, 549 [1996]).

The filing of a felony complaint and the holding of the defendant for grand jury action "are explicit statutory prerequisites for the waiver of indictment procedure" (*People v D'Amico,* 76 NY2d 877, 880 [1990]). Also, for a waiver to be valid, defendant must be "placed in a formal preindictment procedural track" (*People v Casdia,* 78 NY2d 1024, 1026 [1991]; *People v Lopez,* 10 AD3d 264, 266 [2004], *affd* 4 NY3d 686 [2005]).

Moreover, for a waiver to be effective, it must be evidenced by a written instrument containing "the name of the court in which it is executed, the title of the action, and the name, date and approximate time and place of each offense to be charged in the superior court information" (CPL 195.20). While a superior court information "shall not include an offense not named in the written waiver of indictment executed pursuant to section 195.20" (CPL 200.15), this Court has held that the waiver and the SCI containing such information may be viewed as a "single document," for the purpose of satisfying CPL 195.20 (*see People v Montanez,* 287 AD2d 407, 408 [2001], *lv denied* 97 NY2d 685 [2001]; *People v Salvalo,* 286 AD2d 636 [2001], *lv denied* 97 NY2d 687 [2001]).

Also, CPL 200.70 states that neither an indictment nor a superior court information may be amended to cure, inter alia, "(a) A failure thereof to charge or state an offense." (CPL 200.70 [2] [a]; *see People v Perez,* 83 NY2d 269, 276 [1994]; *People v Jones,* 267 AD2d 89 [1999].)

Defendant asserts, and the People do not dispute, that he never signed a new waiver after the first one, which related to the first SCI charging attempted criminal sale in the fifth degree. Nor was the first SCI dismissed or the criminal court complaint reinstated. Furthermore, as the first SCI remained in effect and no criminal court complaint was reinstated, defendant was not "placed in a formal preindictment procedural track" (*People v Casdia, supra*). The second SCI under the same number as the first, according to defendant, constituted an improper amendment.

The People argue that the original plea agreement, pursuant to which the waiver was executed and the first SCI was created, charging fifth-degree attempted sale, was an "inchoate," provisional plea, which all sides understood would be changed if de-

fendant was accepted by DTAP. Thus, the People assert that under the "unique circumstances" of this case, not only did defendant expressly and willingly consent to plead guilty to the attempted third-degree sale charge contained in the new SCI but, given the provisional nature of the agreement that had been formulated by the parties on December 11, 1997, it was implicitly understood at that time that defendant's original plea to attempted fifth-degree sale was not a finalized deal, but rather, was subject to modification depending on whether defendant was accepted by a drug treatment program.

Although the People may be correct as to the understanding of the parties, a waiver of indictment is available "only within the express authorization of the governing constitutional and statutory exception" (*People v Trueluck*, 88 NY2d at 549). Also, even with agreement of counsel, the circumstances under which an indictment (or SCI) may be amended are extremely narrow (*People v Jones*, 267 AD2d 89 [1999]), and do not obtain here.

Here, defendant's written waiver as to the first SCI constituted a "single document," and contained all the necessary information, including the highest count of attempted sale in the fifth degree. Once defendant's original plea to that charge was withdrawn, the original SCI was reinstated (*see People v Schultz*, 258 AD2d 879, 880 [1999], *lv denied* 93 NY2d 929 [1999] [SCI has same force and effect as indictment, and when defendant withdraws guilty plea, SCI is not dismissed, but "restored"]). This put defendant in essentially the same position of the defendant in *People v Boston (supra)*, who, after indictment, waived indictment and pled guilty to a charge not in the indictment, but in the SCI. The Court of Appeals found this to be in contravention of CPL 195.10 (2) (b), vacated the plea and remanded the matter back for further proceedings on the indictment. Given the strict statutory guidelines, and the jurisdictional nature of the waiver, the parties could not simply agree to amend the SCI, nor could they replace it without first dismissing the first SCI and obtaining a new waiver. Concur—Saxe, J.P., Ellerin, Williams, Catterson and Malone, JJ.